UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-02692-KK-AJRx** | Date: | September 8, 2026 |
|---|---|---|---|
| Title: | ***King of Stones LLC et al. v. Kristi Noem et al.*** | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings: (In Chambers) Order DENYING Plaintiffs' Request to Set Aside Agency Action [Dkt. 29] and DENYING Plaintiffs' Motion for Preliminary Injunction as MOOT [Dkt. 30]**

## I. INTRODUCTION

Plaintiffs King of Stones LLC ("KOS") and Carlos Cardoso de Carvalho ("Carvalho") (collectively, "Plaintiffs") bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., challenging the United States Citizenship and Immigration Service's ("USCIS") March 26, 2026 decision to deny Plaintiffs' I-129 petition to extend plaintiff Carvalho's L-1A nonimmigrant status. ECF Docket No. ("Dkt.") 29, Plaintiffs' Opening Brief ("Op. Br.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Plaintiffs' request to set aside USCIS's denial of Plaintiffs' petition is **DENIED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE INITIAL L-1A PETITION

Plaintiff Carvalho is a citizen of Brazil and served for over twenty years as the Chief Executive Officer ("CEO") of Cardoso & Souto Revestimentos LTDA. – ME (Poligram Marmoraria e Revestimentos LTDA.) ("Cardoso"), a company in Brazil that sells customized stone products for residential and commercial buildings. Dkt. 36-1, Certified Administrative Record

Volume 1 ("CAR Vol. 1") at 238-39. On August 21, 2023, USCIS approved plaintiff Carvalho's initial L-1A nonimmigrant petition, classifying him as an intracompany transferee to be employed in a "new office" in the United States in a managerial or executive capacity. See Dkt. 36-4, Certified Administrative Record Volume 4 ("CAR Vol. 4") at 2.

Plaintiff Carvalho subsequently established plaintiff KOS, the United States affiliate of Cardoso. CAR Vol. 1 at 238. Plaintiff KOS is a limited liability company that imports and manufactures stone products for use in residential and commercial buildings within the United States. Id. at 243. Plaintiff Carvalho serves as the company's CEO and Managing Director. Op. Br. at 7.

## B. THE L-1A EXTENSION PETITION

Plaintiffs' initial L-1A approval was valid until August 20, 2024. Id. On August 16, 2024, Plaintiffs filed a petition to extend plaintiff Carvalho's L-1A classification as plaintiff KOS's CEO and Managing Director. Id.; CAR Vol. 1 at 235. The extension petition listed the following duties for the position:

- Oversee U.S. Market Entry: Lead the conceptualization, viability, and implementation of the company's U.S. operations, including setting up the manufacturing unit and showroom.
- Manage Project Execution: Supervise the assembly and opening of the manufacturing unit, ensuring compliance with U.S. standards, and manage the investment budget, infrastructure, and design.
- Supervise Key Managers: Oversee managers handling budgeting, infrastructure, equipment procurement, industrial assembly, purchasing, logistics, and foreign trade procedures.
- Control Business Strategy: Define and manage the company's overall business strategy, including pricing, investment control, commercial policies, marketing, purchasing, logistics, administrative, and financial aspects.
- Set Sales Goals and Strategies: Establish sales goals, pricing strategies, and commercial policies, and conduct market analysis to adjust prices and enhance service quality.
- Develop Marketing and Branding: Implement marketing strategies to strengthen the brand, utilizing digital marketing, social media, and participation in industry fairs.
- Strategize Market Expansion: Map the construction market, define strategies for target areas (Michigan, Indiana, Ohio), and develop short-, medium-, and long-term plans.
- Assess Business Risks: Analyze competition, economic trends, exchange rate fluctuations, and regulatory changes affecting international trade.
- Structure People Management: Define the organizational structure, estimate staffing needs, manage hiring, team building, and training with a customer-focused service philosophy.

CAR Vol. 1 at 251.

Plaintiffs also submitted a chart describing the company's organizational structure as follows:

- CEO and Managing Director
  - Chief Operating Officer ("COO")
    - Operating Manager
      - Stone Cutter Operator
      - Warehouse Clerk
      - Stone Finisher
    - Purchasing Manager
      - General Assistant
    - Sales Manager
      - Sales Representative
      - Attendant

Id. at 237.

On February 28, 2025, USCIS issued a Request for Evidence ("First RFE"), for additional information establishing plaintiff KOS's staffing supported an executive position. Id. at 136. In its First RFE, USCIS asserted Plaintiffs had not sufficiently demonstrated plaintiff KOS "has developed a complex structural hierarchy to elevate the beneficiary to that high level position that is executive in nature" because the evidence did not "show that any of the beneficiary's subordinate employee [sic] as shown on the organizational chart is employed in a managerial or executive capacity." Id. at 138-39. Rather, USCIS noted the "descriptions of the beneficiary's managerial employee [sic] you provided are more indicative of employee [sic] who perform the provision of services to support the operational routines of the business rather than in the management of such services." Id. at 139.

On May 15, 2025, Plaintiffs filed a Response to the First RFE, submitting letters from the three managers describing their job duties, another organizational chart, invoices, and a flyer. Id. at 140-89.

On June 20, 2025, USCIS denied the petition because Plaintiffs "had not established that [plaintiff Carvalho] would be employed in a primarily managerial or executive capacity in the United States." Id. at 121.

On October 13, 2025, Plaintiffs filed the instant action challenging the June 20, 2025 denial. Dkt. 1, Complaint.

On December 22, 2025, USCIS vacated the June 20, 2025 denial and reopened the petition for further processing. CAR Vol. 1 at 113. On January 22, 2026, the agency issued another Request for Evidence ("Second RFE"), requesting additional evidence explaining inconsistencies between the initial L-1A petition and the extension petition, detailing the duties [plaintiff Carvalho] would perform under the extended petition, and "demonstrat[ing] that [plaintiff Carvalho] has sufficient staff in place to elevate [him] to a managerial or executive capacity[.]" Id. at 110. Specifically, USCIS noted:

> You stated that the COO and the three managers are "high-level personnel" who execute the beneficiary's strategies and are responsible for managing their respective teams, and that the COO "will oversee and provide guidance to the [three] heads," but you did not provide any further information about the COO's role, who USCIS notes is the beneficiary's spouse. The list of the U.S. employees you provided, including their titles, names, brief job descriptions, and hourly wages, does not adequately illustrate that the beneficiary's position is supported by subordinate personnel working in managerial roles within your organization or that you have sufficient staffing levels to elevate the beneficiary to a primarily executive or managerial position. Furthermore, the descriptions of the three managers ("Checks all the service ready … ," "Quote and sell to customer and design the project …," and "Serves large clients … ") suggest that they primarily perform tasks necessary to support the operational routines of your business rather than engaging in the management of such services. Employees who primarily perform tasks related to the production of goods or provision of services are not considered to be employed in a managerial capacity.

Id.

On January 30, 2026, Plaintiffs filed a Response to the Second RFE, submitting a legal memorandum and a letter from plaintiff KOS's COO "explaining the company's growth, the addition of a COO role as an operational intermediary, the company's evolving but continuous management structure, and Mr. Carvalho's past and prospective executive responsibilities." Op. Br. at 8.

On March 26, 2026, USCIS denied the petition, issuing a 16-page letter detailing its review of the petition, the Response to the First RFE, the Response to the Second RFE, and all exhibits Plaintiffs filed in support of their petition. CAR Vol. 1 at 1-17. In the denial letter, USCIS quoted directly from the letters, memorandum, organizational chart, and other supporting documentation and explained why the evidence was insufficient to meet Plaintiffs' burden of proof. See id. Ultimately, USCIS based its decision on a single issue: "whether [Plaintiffs] have established that the beneficiary will be employed in a managerial or executive capacity." Id. at 3. After reviewing the evidence in the record, USCIS concluded Plaintiffs failed to establish by a preponderance of the evidence (1) plaintiff Carvalho primarily performs high-level executive duties as opposed to ordinary operational activities alongside other employees and (2) the organizational structure and staffing levels were sufficient to "elevate the beneficiary to a position that is primarily executive in nature." Id. at 9, 16.

## C. THE INSTANT LITIGATION

On April 2, 2026, Plaintiffs filed the operative First Amended Complaint ("FAC") against defendants Kristi Noem, Joseph Edlow, and Connie Nolan (collectively, "Defendants"), seeking review of USCIS's March 26, 2026 denial of Plaintiffs' petition under the APA and requesting declaratory and injunctive relief. Dkt. 22, FAC.

On April 16, 2026, Defendants filed an Answer. Dkt. 23.

On May 28, 2026, the Court issued a briefing schedule. Dkt. 28.

On June 3, 2026, Plaintiffs filed an opening brief arguing the March 26, 2026 denial must be set aside because (1) USCIS denied the petition based on requirements not found in the statute or implementing regulations, such as "numeric time-allocation demands, a purported 'at least 50%' threshold, a '100% executive duty' formulation, and a 'complex hierarchy' prerequisite"; (2) USCIS exceeded its statutory and regulatory authority by "effectively amending the governing eligibility framework through extra-regulatory evidentiary demands, degree-based 'professional' gating, and documentation requirements beyond" those required by the regulations, and (3) USCIS failed to consider the company's reasonable needs as required by statute, ignored the applicable standard of proof, and relied on forbidden reasoning defects. Op. Br. at 3-4.

On June 25, 2026, Defendants filed a response brief, asserting the agency provided a "detailed, reasoned, and justified explanation for its denial based on a reasonable interpretation of the applicable statutes." Dkt. 31, Response at 17. They argue (1) the agency did not apply extra-textual requirements; (2) the agency properly considered staffing levels, level of education, and management duties; and (3) the regulations set a floor, not a ceiling, on the evidence that USCIS may consider. Id. at 9-12.

On July 8, 2026, Plaintiffs filed a reply brief. Dkt. 35.

On July 16, 2026, Defendants filed a sur-reply brief. Dkt. 38.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

Under the APA, the Court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "An action is arbitrary and capricious if the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Innova Sols., Inc. v. Baran, 983 F.3d 428, 431 (9th Cir. 2020) (quoting Nat'l Ass'n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 658 (2007)). This standard is "highly deferential, presuming the agency action to be valid and requires affirming the agency action if a reasonable basis exists for its decision." Kern Cnty. Farm Bureau v. Allen, 450 F.3d 1072, 1075-76 (9th Cir. 2006) (citation modified) (quoting Indep. Acceptance Co. v. California, 204 F.3d 1247, 1251 (9th Cir. 2000)).

On review, the role of the Court is to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Occidental Eng'g Co. v. I.N.S., 753 F.2d 766, 769 (9th Cir. 1985); see also Nat'l Ass'n of Home Builders v. Norton, 340 F.3d 835, 841 (9th Cir. 2003) ("Our review of an agency decision is based on the administrative record and the basis for the agency's decision must come from the record."). In doing so, the Court "may not substitute [its] judgment for that of the agency," even if it would have come to a different conclusion. Kern Cnty. Farm Bureau, 450 F.3d at 1076 (citing Marsh v. Or. Nat.

Res. Council, 490 U.S. 360, 376 (1989)). Thus, the Court must allow an agency decision to stand unless "the evidence presented would compel a reasonable finder of fact to reach a contrary result." Fam., Inc. v. U.S. Citizenship & Immigr. Servs., 469 F.3d 1313, 1315 (9th Cir. 2006) (quoting Monjaraz-Munoz v. I.N.S., 327 F.3d 892, 895 (9th Cir. 2003)).

## IV.
## DISCUSSION

### A. THE DENIAL OF PLAINTIFFS' PETITION WAS NOT ARBITRARY OR CAPRICIOUS

#### 1. Applicable Law

Under the Immigration and Nationality Act ("INA"), an employer seeking to transfer a manager or executive from one of its foreign offices to establish a "new office" in the United States can do so by obtaining an L-1A visa. 8 U.S.C. § 1101(a)(15)(L). An initial L-1A petition to establish a "new office" may be approved for a period not to exceed one year. 8 C.F.R. § 214.2(l)(7)(i)(A)(3). Thereafter, the employer may file a petition to extend the L-1A classification for the manager or executive, accompanied by:

(A) Evidence that the United States and foreign entities are still qualifying organizations as defined in paragraph (l) (1)(ii)(G) of this section;

(B) Evidence that the United States entity has been doing business as defined in paragraph (l)(1)(ii)(H) of this section for the previous year;

(C) A statement of the duties performed by the beneficiary for the previous year and the duties the beneficiary will perform under the extended petition;

(D) A statement describing the staffing of the new operation, including the number of employees and types of positions held accompanied by evidence of wages paid to employees when the beneficiary will be employed in a managerial or executive capacity; and

(E) Evidence of the financial status of the United States operation.

Id. § 214(l)(14)(ii).

The size of the company, while not dispositive, is a "relevant 'factor in assessing whether an organization's operations are substantial enough'" to allow an executive to "devote his primary attention to [executive] duties as opposed to operational ones." Brazil Quality Stones, Inc. v. Chertoff, 531 F.3d 1063, 1070 (9th Cir. 2008) (citation modified) (quoting Fam., Inc., 469 F.3d at 1316). But if the agency takes staffing levels into consideration, the INA requires it to account for the "reasonable needs" of the organization "in light of the overall purpose and stage of development." See 8 U.S.C. § 1101(a)(44)(C).

///

///

**2. Analysis**

As an initial matter, in their petition, Plaintiffs asserted plaintiff Carvalho is employed in an executive capacity. Thus, Plaintiffs were required to establish plaintiff Carvalho "primarily (1) directs the management of the organization or a major component or function of the organization; (2) establishes the goals and policies of the organization or a major component or function of the organization; (3) exercises wide latitude in discretionary decision-making; and (4) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization." 8 U.S.C. § 1101(a)(44)(B); 8 C.F.R. § 214.2(1)(ii)(C). Plaintiffs bore the burden of demonstrating plaintiff Carvalho's responsibilities are "primarily" executive, not operational. See Brazil Quality Stones, Inc., 531 F.3d at 1070 ("Under the plain terms of the INA, [Plaintiff] cannot quality for an L-1A visa simply because he performs managerial tasks; such tasks must encompass his primary responsibilities."); Healthy & Nat. Trading LLC v. U.S. Dep't of Homeland Sec., No. CV 14-2332-PA-Ex, 2014 WL 12564125, at *4 (C.D. Cal. Nov. 12, 2014) ("An employee who 'primarily' performs the tasks necessary to produce a product or to provide services is not considered to be 'primarily' employed in a managerial or executive capacity."), aff'd, 691 F. App'x 437 (9th Cir. 2017).

The March 26, 2026 denial properly determined plaintiff KOS's petition failed to show that plaintiff Carvalho would be employed in a primarily executive capacity in the United States. CAR Vol. 1 at 16. To reach its decision, USCIS considered the relevant factors and articulated a rational connection between the facts found and the choice made. See Nat. Res. Def. Council v. U.S. Dep't of the Interior, 113 F.3d 1121, 1124 (9th Cir. 1997) (explaining that in assessing whether an agency decision should be set aside under the APA, "[courts] ask whether the agency considered the relevant factors and articulated a rational connection between the facts found and the choice made" (internal citation and quotation marks omitted)). Thus, as discussed below, Defendants' decision was not arbitrary or capricious.

**a. Job Description and Duties**

Plaintiffs argue USCIS improperly considered requirements not found in the INA and regulations when assessing the job duties set forth in the petition. See Op. Br. at 9 ("The statute requires that the employee 'primarily perform the qualifying functions. It does not require that the petitioner allocate exact percentages to every duty, prove that a particular category consumes 'at least 50%' of the employee's time, or demonstrate that a task is a '100% executive duty.'"). However, this argument is unavailing.

In assessing plaintiff Carvalho's job duties and responsibilities, USCIS examined the statement of duties in the initial petition, two letters from the COO, and letters from the Operations Manager, Purchasing Manager, and Sales Manager. It found the description of plaintiff Carvalho's duties was "vague and generalized" and "[e]xcept that the beneficiary was able to obtain a few spots at fairs, events, and/or showrooms . . . they do not show how the beneficiary directed and will continue to direct the management of your organization[.]" CAR Vol. 1 at 7. It further found the statements submitted in response to the Second RFE "suggest[] that the beneficiary spends the majority of his time directly performing day-to-day operational activities such as seeking out potential partnerships and potential suppliers and stone materials as well as logistics planning and pricing negotiation for your business operations." Id. at 10. Finally, it found plaintiff Carvalho's "direct involvement in the marketing and advertising of your services and products" was described

too generally "to establish that the activities which fall under this category 'is a 100% executive duty.'"[1] Id.

USCIS thus concluded Plaintiffs had not shown plaintiff Carvalho "'directs the management' to carry out these day-to-day administrative and operational activities." Id. In doing so, the agency noted the job descriptions provided in the petition did not include "a percentage of time he devoted on each task" such that there was "no indication of whether he would spend at least 50% of his time" managing the leadership team. Id. Contrary to Plaintiffs' assertions, this did not indicate USCIS imposed improper, extra-textual requirements in assessing the petition. See generally Op. Br. Rather, it was a commonsense statement in the context of the evidence in the record, explaining that without a clear breakdown of duties and tasks, Plaintiffs could not meet their burden of proving that plaintiff Carvalho "primarily" engages in executive functions (i.e., that executive duties occupy more than 50% of his time). The record does not compel a contrary result. See Fam., Inc., 469 F.3d at 1315.

**b. Organizational Structure**

Plaintiffs also argue USCIS exceeded its statutory and regulatory authority in its analysis of whether plaintiff KOS's organizational structure adequately supported plaintiff Carvalho's employment in a primarily executive capacity. See Op. Br. at 11-12. Specifically, Plaintiffs take issue with USCIS's statements that (1) the company lacked "clearly defined tiers of management," (2) it was unclear whether the company's managers were "professionals" as defined by the statute, and (3) plaintiff KOS's staffing levels did not indicate the organizational structure was sufficient to allow the plaintiff Carvalho to "direct the management" of the company. See id. at 11-14.

However, USCIS assessed plaintiff KOS's structure and staffing primarily to determine whether plaintiff Carvalho could meet the definition of "executive capacity," namely, whether he would be engaged in "directing 'the management' of the organization" rather than directly controlling the day-to-day operations. See CAR Vol. 1 at 16. Based on the record, USCIS found the petition did not demonstrate plaintiff Carvalho's subordinates were professional or managerial positions, such that they could relieve him of the operational duties associated with the business. Id. at 15-16. Instead, the petition lacked clarity and detail as to "how the beneficiary manages the staff," "the job duties for those contractors engaged by the company," and "how the supporting staff enables the beneficiary to focus primarily on executive-level responsibilities." Id. at 16. Therefore, USCIS concluded "not based on the number of employees you have, but on the positions they hold and the duties they perform," Plaintiffs had not established plaintiff Carvalho would be "elevate[d] . . . to a position that is primarily executive in nature." This conclusion is permissible under the INA and its implementing regulations. See Brazil Quality Stones, Inc., 531 F.3d at 1067 (holding the denial of L-1A visa was proper where evidence showed that the company "ha[d] not yet reached the level of organizational sophistication in which [Plaintiff] could devote his primary attention to managerial duties as opposed to operational ones, even though he held a position at the head of [the company's] corporate structure"). The record does not compel a different result. See Fam., Inc., 469 F.3d at 1315.

[1] To the extent USCIS erred in using the language of "100% executive" duties, this was harmless error.

Ultimately, in denying Plaintiffs' petition, USCIS engaged in a reasoned and detailed analysis of the relevant factors and articulated a "reasonable basis [] for its decision." Kern Cnty. Farm Bureau, 450 F.3d at 1076 (citation omitted). Thus, USCIS's decision was not arbitrary and capricious and may not be set aside.

## V.
## CONCLUSION

For the reasons set forth above, Plaintiffs' request to set aside the denial of Plaintiffs' I-129 petition is **DENIED**. Furthermore, Plaintiffs' Motion for Preliminary Injunction is **DENIED** as moot.

**IT IS SO ORDERED**. (JS-6)